IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JERMAINE FOX,

    Petitioner,                            No. 2:06-cv-01435 ALA HC

    vs.

D.K. SISTO,

    Respondent.                           ORDER

_____/

Pending before the Court are Jermaine Fox's ("Petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (doc. 1), Respondent's Answer (doc. 7), and Petitioner's Reply (doc. 8). Also before the Court are the parties' briefs filed in response to this Court's December 19, 2007 order requesting additional briefing on the applicability of *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007) to this matter. For the reasons discussed below, Petitioner's application is denied.

**I**

**A**

On September 6, 1991, the San Joaquin County Superior Court found Petitioner guilty of second-degree murder in violation of California Penal Code section 187. Petitioner was also convicted of two counts of assault with a firearm, in violation of California Penal Code section 245(a), and shooting at an inhabited dwelling, in violation of California Penal Code section 246.

1


1  He was sentenced to 15 years to life.

2      The Board of Prison Terms ("BPT") described the facts underlying Petitioner's offense
3  as follows:

> at approximately 12:56 a.m. on January 24, 1991, Stockton Police officers responded to a call of shots . . . . Upon arrival, officers heard screaming and saw a van near the entrance to the carport of the apartment complex parking lot with a shattered back window. Lying at the front of the van was Finnis Caldwell. Caldwell was pronounced dead at 1:34 a.m. as a result of a single .380 caliber gunshot wound that entered his left back, penetrating both lungs and his heart, resulting in massive internal hemorrhaging. Damien Braggs, who was seated in the driver's seat of the van, sustained a single gunshot wound to his elbow. Joel Wyrick, who was seated in the front passenger seat of the vehicle, suffered a gunshot wound. The bullet went through the back of the seat, striking him in the left side of his back. Tirrill Butler . . . and Tony Vanderwal, who were in the back of the van, were able to jump on the floor of the vehicle. They suffered no injuries. Investigations revealed that both a nine millimeter gun and a .380 caliber gun were used in this offense . . . . Officers retrieved several nine millimeter casings from the parking lot driveway and at least four bullets from the back of the van. Further, bullet holes were discovered in the parking lot rafters above the van, as well as a bullet hole in Caldwell's vehicle. During the incident, Wyrick had observed the defendant in a lighted area leaning against the apartment complex wall, holding a chrome gun and firing the gun. Wyrick identified the defendant. While ducking for safety, Wyrick heard footsteps walking toward the van, as well as gunfire . . . . Wyrick heard the footsteps descending and heard a vehicle leave the scene . . . .

BPT June 13, 2005 Decision ("2005 Decision"), Answer Ex. 2 at 9-11.

**B**

The BPT decided that Petitioner was unsuitable for release on parole. The BPT stated:

> [c]ertainly the first thing that we considered was your commitment offense . . . . For all intents and purposes, this looks like a gang killing, a gang shooting. . . . [W]hen [Petitioner's] buddy pulled over this van full of people and started shooting at them, he started shooting too . . . . [E]ither he's not telling us why he was shooting or he didn't know why he was shooting, and neither of those is really an acceptable motive. There were multiple victims. Certainly there was more than one person hit. Mr. Caldwell, unfortunately was killed. This crime took place in an area where there were people living, and anybody could have been shot. There could have been multiple victims in this crime that he didn't even

2

Case 2:06-cv-01435-FCD-KJM   Document 13   Filed 07/01/08   Page 2 of 12

He was sentenced to 15 years to life.

The Board of Prison Terms ("BPT") described the facts underlying Petitioner's offense as follows:

> at approximately 12:56 a.m. on January 24, 1991, Stockton Police officers responded to a call of shots . . . . Upon arrival, officers heard screaming and saw a van near the entrance to the carport of the apartment complex parking lot with a shattered back window. Lying at the front of the van was Finnis Caldwell. Caldwell was pronounced dead at 1:34 a.m. as a result of a single .380 caliber gunshot wound that entered his left back, penetrating both lungs and his heart, resulting in massive internal hemorrhaging. Damien Braggs, who was seated in the driver's seat of the van, sustained a single gunshot wound to his elbow. Joel Wyrick, who was seated in the front passenger seat of the vehicle, suffered a gunshot wound. The bullet went through the back of the seat, striking him in the left side of his back. Tirrill Butler . . . and Tony Vanderwal, who were in the back of the van, were able to jump on the floor of the vehicle. They suffered no injuries. Investigations revealed that both a nine millimeter gun and a .380 caliber gun were used in this offense . . . . Officers retrieved several nine millimeter casings from the parking lot driveway and at least four bullets from the back of the van. Further, bullet holes were discovered in the parking lot rafters above the van, as well as a bullet hole in Caldwell's vehicle. During the incident, Wyrick had observed the defendant in a lighted area leaning against the apartment complex wall, holding a chrome gun and firing the gun. Wyrick identified the defendant. While ducking for safety, Wyrick heard footsteps walking toward the van, as well as gunfire . . . . Wyrick heard the footsteps descending and heard a vehicle leave the scene . . . .

BPT June 13, 2005 Decision ("2005 Decision"), Answer Ex. 2 at 9-11.

**B**

The BPT decided that Petitioner was unsuitable for release on parole. The BPT stated:

> [c]ertainly the first thing that we considered was your commitment offense . . . . For all intents and purposes, this looks like a gang killing, a gang shooting. . . . [W]hen [Petitioner's] buddy pulled over this van full of people and started shooting at them, he started shooting too . . . . [E]ither he's not telling us why he was shooting or he didn't know why he was shooting, and neither of those is really an acceptable motive. There were multiple victims. Certainly there was more than one person hit. Mr. Caldwell, unfortunately was killed. This crime took place in an area where there were people living, and anybody could have been shot. There could have been multiple victims in this crime that he didn't even

2

know existed.  So this was a situation that put so many people at risk.  It was so irresponsible and we don't know what the motive is . . . . [Petitioner] does have a prior criminal history . . . for vandalism and gambling.  He had an arrest earlier as a juvenile for having drugs for sale . . . .  He certainly has an unstable social history.  That includes . . . selling drugs.  It includes the criminal behavior that I just mentioned and it also includes being a member of a gang.  He's programmed well . . . and he has upgraded vocationally . . . .  He certainly has employable skills, and he in fact had a job offer at today's hearing . . . .  He has not, however, sufficiently participated in beneficial self-help at this point.  He's had no 115s during his incarceration for this crime, which is very commendable.  The psychological evaluation dated 2/10/05 by Dr. Starrett, is largely supportive, although in terms of his future risk of dangerousness, Dr. Starrett does compare him to inmates with similar crimes . . . .  In summary, he would rate from lower than average in historical factors to the low range in personality factors, in terms of his risk of future violence in comparison to inmates with similar crimes.  Like to know what his future dangerousness is in relationship to the rest of us . . . .  The Panel finds, Mr. Fox, that you need to continue your self-help in order to understand and cope with stress in a non-destructive manner, also in order to gain some insight into this commitment offense, . . . the underlying factors that led to this offense, the real reasons for this offense, and for your part in this offense.  I think that your comment . . . that your mistake was that you got in a car with somebody is really minimizing what was obviously going on that night . . . clearly it's something more than you just happened to be in the area and got in the car and the next thing you knew, you were shooting a nine millimeter.  We do want to commend you for the work that you've done over the last year.  You've been participating in AA continuously, and that's been since 1997.  You participated in '04 in Network for Life and Breaking Barriers and anger management and basic life skills. You also took a real estate principles course and you've been getting marks on your work in the metal fab paint shop.  However, currently the positive aspects of behavior do not outweigh the factors of unsuitability.

2005 Decision at 47-53.

Petitioner challenged his parole denial in a state habeas corpus petition.  The San Joaquin County Superior Court denied Petitioner's petition on March 6, 2006.  The court concluded that the BPT's decision was supported by some evidence and rejected Petitioner's contention that the BPT erred in deciding that he was unsuitable for release on parole.  The Superior Court

3

concluded:

> [a] review of the record indicates the Board's decision to deny petitioner parole for two years was based on an evaluation of appropriate factors applicable to his particular case from which it could properly conclude there was some evidence to support the finding that petitioner's offense was committed in an especially heinous, atrocious and cruel manner. That finding alone, was sufficient to determine petitioner's unsuitability for parole.
> . . .
> . . . The Board properly concluded that petitioner attacked multiple victims during the shooting and that the shooting, by it [sic] nature, demonstrated an exceptionally callous disregard for human life and suffering. Petitioner admitted he did not know who was in the van when he began shooting at it. Also, the shooting occurred at a multiple family dwelling and, so, endangered numerous innocent victims. Furthermore, whether petitioner's motive was gang related, or as he describes, to assist a mere acquaintance in an unknown dispute, it was trivial in relation to the seriousness of the crime.

Superior Court Order, Answer Ex. 3 at 4.

Petitioner subsequently appealed the Court's denial of his petition for a writ of habeas corpus in the California Court of Appeal. That court summarily denied Petitioner's request for relief on March 28, 2006.[1] Petitioner then filed a petition for habeas corpus with the California Supreme Court. On June 14, 2006, that court also summarily denied Petitioner's petition. On June 28, 2006, Petitioner filed a timely application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) here.

In determining whether the California courts erred in holding that Petitioner's federal constitutional rights were not violated, this Court must look to the San Joaquin County Superior Court's decision as the last reasoned state court opinion addressing Petitioner's arguments. *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002) (explaining that when a subsequent

---

[1] "[T]he sole and proper remedy after denial of a petition for writ of habeas corpus by a superior court is to file a new petition with the Court of Appeal, which has original jurisdiction in habeas corpus matters." *In re Reed*, 33 Cal. 3d 914, 918 n.2 (1983), *overruled on other grounds in In re Alva*, 33 Cal. 4th 254, 264 (2004). "Further review may be sought in [the California Supreme Court] either by a new petition for habeas corpus or, preferably, by a petition for hearing." *Id.* Petitioner's failure to file a new petition with the Court of Appeal does not affect his claims before this Court.

4

appeal is denied without comment, a federal court must review the last state court decision that actually addresses a claim).

## II

### A

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B

Petitioner alleges in his § 2254(a) application that his incarceration violates due process because the BPT relied on the nature of his commitment offense as some evidence that he was unsuitable for parole. Pet. at 3.

This Court construes this as a procedural due process claim. "'A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.'" *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). Respondent argues that Petitioner's claim fails because California inmates do not have a federally protected liberty interest in parole. This contention is contrary to the Ninth Circuit's decision in *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006). ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.")

**C**

As to procedural protections, in *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." (Citation omitted). The Ninth Circuit has held that the "some evidence" standard announced in *Hill* applies to parole release proceedings. *Irons*, 505 F.3d at 851. This Court is bound by that conclusion.

Respondent argues that some evidence test established in *Irons* does not apply to the parole context because the application of the test in this context is not clearly established federal law. Respondent also contends that this Court is not bound by *Irons*, because circuit law has no precedential effect under AEDPA.

However, this Court cannot contravene the Ninth Circuit's holding that the some evidence standard applies to parole cases. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (citation omitted) ("District courts are, of course, bound by the law of their own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.'").

This Court must determine whether "some evidence" supported BPT's 2005 Decision in that Petitioner is unsuitable for parole.

**D**

Petitioner argues that the BPT's decision to deny parole was not supported by some evidence because it was based on the nature of Petitioner's commitment offense. This claim fails. In *Irons*, 505 F.3d at 853, the Ninth Circuit held that

> where, as here, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense," Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E), we cannot say that the state court unreasonably applied *Hill*'s "some evidence" principle.

6

In *Irons*, the record demonstrated that the BPT relied on the commitment offense in determining that the prisoner was not suitable for release on parole. *Id.* at 852.

Petitioner notes that he has reached his minimum eligible parole date. Petitioner attempts to distinguish his case from *Irons* on the ground that the decision in *Irons* to deny habeas relief "was made before the inmate had served the minimum number of years required by his sentence." Petr' Br. in Resp. to Ct. Order at 2. However, this difference is not dispositive. The Ninth Circuit limited its holding in *Irons* as follows: "All we held in [*Sass*, 461 F.3d at 1125 and *Biggs v. Terhune*, 334 F.3d 910, 912 (9th Cir. 2002)] and all we hold today, therefore, is that, given the particular circumstances of the offenses of these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Irons*, 505 F.3d at 853-54. In an unusual comment in *Irons*, the panel expressed its aspiration that some future court decision will conclude that the BPT has the duty to grant parole where "there was substantial evidence in the record demonstrating rehabilitation." *Id.* at 854.

The Court stated:

> We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

*Id.*

However, the *Irons* panel did not cite any authority to support its prognostication that the denial by the state court of habeas corpus relief when the minimum term has been served would be "contrary to, or involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1). No presently binding Ninth Circuit decision has fulfilled the prediction of the *Irons*'s panel.

In the precedential portion of the *Irons* decision, the Court held that "we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for

7

parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*." *Irons*, 505 F.3d at 851. Under California law, a prisoner is unsuitable for parole if:

> (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;
> (2) the prisoner has a previous record of violence;
> (3) the prisoner has an unstable social history;
> (4) the prisoner has committed sadistic sex offenses;
> (5) the prisoner has a history of mental or psychological problems; and
> (6) the prisoner has engaged in serious misconduct while in prison.

Cal. Code Regs., tit. 15 § 2402(c).

A prisoner's commitment offense, on its own, may justify parole denial if "the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Irons,* 505 F.3d at 852 (quoting *Dannenberg*, 34 Cal. 4th 1061,1071 (2005)). An offense committed in an especially heinous, atrocious or cruel manner is a factor tending to show unsuitability for release. Cal. Code. Regs., tit. 15 § 2402(c)(1). Factors to be considered in determining whether a crime was "especially heinous, atrocious or cruel manner" include:

> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

*Id.*

Pursuant to binding Ninth Circuit precedent, Petitioner's commitment offense on its own justified the BPT's denial if the BPT's decision was based on factors beyond the minimum elements of the crime, and demonstrated that the inmate would have, at the time of the suitability hearing, presented a danger to society if released.

### E

Petitioner was convicted of second-degree murder.

> In California, '[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements-i.e., willfulness, premeditation, and deliberation-that would support a conviction of first degree murder.' *People v. Nieto Benitez*, 4 Cal.4th 91, 102, 13 Cal. Rptr. 2d 864, 840 P.2d 969 (1992). 'Malice, for the purpose of defining murder, may be express or implied. ([Cal. Penal Code] § 188.) It is express 'when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' ([Cal. Penal Code] § 188; People v. Mattison (1971) 4 Cal.3d 177, 182, 93 Cal.Rptr. 185, 481 P.2d 193.) Implied malice is present 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' ([Cal. Penal Code] § 188; *People v. Mattison*, supra.).'

*Hillmon v. Mendoza-Powers*, 2008 U.S. Dist. LEXIS 40200 (E.D. Cal. May 19, 2008).

Petitioner was also convicted of two counts of assault with a firearm. The California Penal Code provides that

> [a]ny person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment.

Cal. Penal Code § 245(a).

In addition, Petitioner was convicted of shooting at an inhabited dwelling. The California Penal Code states that

> [a]ny person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar, as

9

> defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year. As used in this section, "inhabited" means currently being used for dwelling purposes, whether occupied or not.

Cal. Penal Code § 246.

In the present case, the BPT explained that the type of murder at issue was a "cold-blooded crime" which involved "shooting at people on the street in the area of an apartment building where people were probably sleeping." Furthermore, the BPT reasoned that "this was an offense where there were multiple victims" and so it was a "very dispassionate crime . . . [which] [c]ertainly has the appearance that it was probably somewhat calculated." The BPT also noted that the motive was very trivial in relation to the offense. The BPT's reasons go beyond the minimum elements of the crime, and speak to the inherently egregious nature of the offense. Therefore, the BPT's decision was supported by some evidence. For the same reason, the Superior Court of San Joaquin County's order upholding the BPT's decision was not a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."

### III

Petitioner also claims that because "[his] commitment offense is not particularly egregious as Mr. Irons [sic]" he is therefore entitled to habeas relief. Petr' Br. in Resp. to Ct. Order at 2. However, in order to determine whether a crime is egregious, the BPT must rely on the factors set forth in Cal. Code. Regs., tit. 15 § 2402(c)(1). *Irons*, 505 F.3d at 851. Petitioner has cited no authority for the proposition that the crime in *Irons* is the prototypical heinous crime against which all others must be measured.

### IV

Petitioner next contends that his right to due process was violated because the jury, and

10

not the BPT, must be the entity that determines whether a commitment offense is heinous. However, the Supreme Court has never held that the reason a parole board relies on in denying parole must be based on a fact found by a jury. All that is required to protect the liberty interest is that there is some evidence of one of the factors set forth in § 2402(c), including whether the commitment offense was especially heinous. *Irons*, 505 F.3d at 851. The Ninth Circuit has endorsed California's parole scheme, which vests the BPT, and not juries, with the power to make the determination to either grant or deny parole. Therefore, Petitioner's claim fails.

**V**

Petitioner claims that his due process rights were violated when the state court did not issue an Order to Show Cause ("OSC") and hold an evidentiary hearing. Under California law, if a state court finds that the factual allegations stated in a petition for a writ of habeas corpus establish a prima facie case for relief, if true, the court will issue an OSC. *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995). When, after considering the respondent's return and the petitioner's traverse, the court finds material facts in dispute, it may appoint a referee and order an evidentiary hearing. *Id.* at 1261. Petitioner's claim involves the interpretation of California law, and is therefore a question this Court cannot reach on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

**VI**

To the extent Petitioner's federal habeas petition may be construed as a request for an evidentiary hearing in federal court, the Court rejects the request.

> [F]or a post-AEDPA petitioner to receive an evidentiary hearing in federal court, he must first show that he has not failed to develop the factual basis of the claim in the state courts: if he has failed, he must meet one of the two narrow exceptions stated in the statute. See 28 U.S.C. § 2254(e)(2)(A) - (B). Then he must meet one of the [*Townsend v. Sain*, 372 U.S. 293 (1963)] factors and make colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief.

11

*Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005). Petitioner never *explains* the legal basis for his entitlement to such a hearing. Without more information regarding Petitioner's request, the Court cannot determine whether Petitioner is in fact entitled to an evidentiary hearing. Therefore, Petitioner's request for an evidentiary hearing is denied.

## Conclusion

The BPT's finding that Petitioner is unsuitable for release on parole because he poses an unreasonable risk to public safety is supported by some evidence that outweighs the suitability factors based on his performance while imprisoned. Petitioner's other allegations fail to state a claim for federal habeas relief. Therefore, the state court's denial of his petition was not "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

/////

DATED: July 1, 2008

/s/ Arthur L. Alarcón
_____
UNITED STATES CIRCUIT JUDGE
Sitting by Designation